The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>PATRICK DYON WILLIAMS,<br><br>　　　　　　　　Defendant. | NO. 2:18-cr-00132-RAJ<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Patrick Dyon Williams's motion for compassionate release. Dkt. 896. Having thoroughly considered the parties' briefing (Dkts. 896-901, 914-916, 920-922, 928-930 and 941), the supplemental materials requested by the Court (Dkts. 933, 935 and 937), and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

**I. BACKGROUND**

Mr. Williams is an inmate currently detained at Federal Correctional Institution Sheridan, with a projected release date of December 28, 2023. On February 25, 2019, he entered a plea of guilty to one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. Dkt. 399. On August 23, 2019, this Court sentenced Mr. Williams to 60 months in custody, to be followed by four

years of supervised release. Dkt. 619. Mr. Williams now moves for compassionate release arguing that he presents extraordinary and compelling reasons for the Court to reduce his sentence to time served and grant his immediate release to begin his four-year term of supervised release or an extended period of home confinement.

## II. DISCUSSION

### A.   Legal Standard for Compassionate Release

A federal court generally "may not modify a term of imprisonment once it has been imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c).

Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception allowing a court to reduce a term of imprisonment for "extraordinary and compelling reasons." While under the original statute, only the BOP Director could file such a motion, that limitation has been revised. As part of the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow a defendant to seek a reduction from the BOP and that request has been denied or 30 days have passed.

Congress failed to provide a statutory definition of "extraordinary and compelling reasons." Instead, Congress stated that the Sentencing Commission "in promulgating general policy statements regarding the sentencing modification provisions in 18 U.S.C. § 3582(c)(1)(A) shall describe what should be considered extraordinary and compelling reasons for sentence reduction." A policy statement was issued and embodied in U.S.S.G. § 1B1.13.

The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental

condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

While the Sentencing Commission did issue a policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," *United States v. Aruda,* No. 20-10245, 2021 WL 1307884 (9th Cir., Apr. 8, 2021) has since held the current version of § 1B1.13 refers only to motions filed by the BOP Director and does not reference motions filed by a defendant as now allowed under § 3582(c)(1)(A). Consequently, this Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding.

In adopting this rationale, the Ninth adopted the reasoning of five other circuits. In *Aruda, Id.,* the Court specifically referenced the explanation of the Fourth Circuit:

> "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered…to consider *any* extraordinary and compelling reason for release that a defendant might raise. '" *United States v. McCoy,* 981 F3rd 271, 284 (4th Cir. 2020) (quoting *United States v. Brooker,* 976 F.3d 228, 230 (2nd Cir. 2020)."

In light of the foregoing, § 1B1.13 may inform this Court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.

Mr. Williams's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."

///

### B. Exhaustion of Administrative Remedies

Prior to considering the merits of Mr. Williams's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). Mr. Williams submitted a request for compassionate release to the warden of his facility on April 7, 2020. Dkt. 898, Ex. 1. On February 10, 2021, counsel for Mr. Williams followed up with another request for compassionate release, to which there was no response. Dkt. 898, ¶¶ 2-4, Exs. 2, 4. Based on the evidence presented, the Court finds the statutorily required 30-day period has expired, and Mr. Williams's motion is properly before the Court.

### C. Extraordinary and Compelling Circumstances.

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Williams's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

To be eligible for this Court to exercise its discretion for a reduced sentence, Mr. Williams bears the burden to show "extraordinary and compelling reasons" for compassionate release to be granted.

Mr. Williams argues that the combination of his medical issues, specifically apical scarring on his lung and shortness of breath, for which he claims he has received inadequate medical care, his race, and his obesity heighten his risk of severe complications or death should he become infected with coronavirus-19 (COVID-19). Dkt. 896.

While conceding his risk from COVID-19 has been greatly reduced since he has received the vaccination, he argues that he remains at heightened risk due to the above factors, the fact that vaccines are not 100% effective, and concerns about the efficacy of the vaccination against emerging variants. Dkt. 896.

The government argues that the grounds set forth by Mr. Williams do not support compassionate release. As it relates to Mr. Williams's lung issues, the government sets

forth evidence that the medical records contradict his claims and that he has omitted relevant information.

The government highlights that Mr. Williams initially declined to be vaccinated, but then subsequently received his first dose, and the second dose was administered on March 22, 2021. While acknowledging that no vaccine is 100% effective, the government indicates that the slight remaining risk posed to Mr. Williams does not constitute an "extraordinary and compelling" reason sufficient to overturn the Court's original sentence in this matter and justify Mr. Williams's release at this time.  Dkts. 914 and 933.

In reply, Mr. Williams reiterates that his medical condition related to his lungs remains untreated, and that despite the government's assertion that diagnostic testing was being scheduled, at the time of the filing of the reply (March 25, 2021), no further testing had been done.  Dkt. 920.

The Court previously questioned the actual medical condition and treatment provided to Mr. Williams because of the dated medical records submitted in support of his request for compassionate release.  The Court ordered the government to obtain from the Bureau of Prisons updated medical records.  The Court's concern has been fully addressed with the submission of the current medical records for Mr. Williams.  The Court will address each of his concerns in turn.

His first concern about his fears of contracting COVID-19 have been addressed with his having received his second Moderna vaccination.  He is now 100% fully vaccinated.  To a certain degree, the Court agrees with the government that Mr. Williams's receipt of the vaccination moots all of his arguments about his vulnerability to COVID-19.  While no vaccine may be 100% effective, it substantially reduces the likelihood of Mr. Williams contracting the virus. He is thus left with just the argument of his fear of contracting the virus.  While concerns about contracting the virus are certainly understandable, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence." *See, United States v. Eberhart,* _F. Supp. 3d_, 2020 WL 1450745 at *2 (N.D. Cal. 2020);

*United States v. Stanard,* 2020 WL 221948 (W.D. WA. May 7, 2020) and *United States v. Fuentes*, 2020 WL 1937398 (E.D. Ca. Apr. 22, 2020).

Mr. Williams's next concern pertains to his dyspnea or shortness of breath. The recently supplied medical records clearly indicate this concern has been addressed by medical officials at his place of incarceration. These records indicate that he received a chest x-ray that was reviewed by a radiologist, who in a report dated April 19, 2021, concluded that the "visualized lungs are clear" and the "heart size normal." Dkt. 933, Ex. A at 45. The report, as noted by the government, also indicates "[N]o acute cardiopulmonary disease." While Mr. Williams may have experienced shortness of breath, his concern was addressed, he was examined and there is no contrary persuasive medical evidence to support his contention that these facts support a medical related extraordinary and compelling reason for release.

The Court further notes that because of Mr. Williams's complaint of low back pain, he also received a back x-ray on April19, 2021. Dkt. 933, Ex. A at 44. In addition, Mr. Williams was the beneficiary of numerous blood pressure checks, blood oxygen saturation evaluations and pulse measurements. Dkt. 914, Ex. A. A complete review of the medical records leads this Court to the unmistakable conclusion that the Bureau of Prisons has provided adequate medical care and treatment in response to Mr. Williams's complaints of lack of proper care or treatment. The medical record does not support his assertion that the Bureau of Prisons ignored his requests for treatment.

Mr. Williams next contends that because he is African American his race serves as a risk factor. This argument ignores the fact that Mr. Williams has now been fully vaccinated which, as noted above, considerably reduces the likelihood of his contracting the virus. The Court looks to what other race-related evidence Mr. Williams has submitted that would serve as a basis to grant the relief he seeks. While he has failed to provide sufficient analysis to support his release claim, the Court would be remiss in not acknowledging the Centers for Disease Control and Prevention (CDC) data of COVID-19

infections and deaths as staggering for African Americans, but without more, no relief can be accorded to Mr. Williams.

Last is Mr. Williams's contention that his body mass index (BMI) is a factor warranting compassionate release. That argument was made without the benefit of Mr. Williams having received his vaccinations. Many of the cases cited by Mr. Williams in support of his obesity claims were made regarding unvaccinated persons. Dkt. 896, at 18.

The CDC has concluded that a BMI of over 30 is an identified risk factor for serious illness from COVID-19, and the government does not dispute this determination. However, the CDC and other authorities have recognized that BMI is, at best, a crude proxy for actual obesity. BMI is a formula based on one's height and weight, but does not differentiate between weight from muscle and weight from belly fat. Mr. Williams has not asserted that he suffers from morbid obesity. While morbid obesity may not be the final standard to consider Mr. Williams's motion, there is no persuasive indication in his medical records that he suffered any serious health issues to date related to his weight. Moreover, Mr. Williams's weight and BMI have fluctuated from being several points over the obesity threshold (35.3 at intake screening in October 2019) to 30.4 just months ago, in December 2020. Ex. 914, Ex. A. Even if this Court were to find that Mr. Williams's weight justified consideration as a compelling and extraordinary circumstance, the seriousness of his crime and criminal history dictate otherwise.

The Court next turns to the last issue raised by Mr. Williams claiming inadequate medical care. The Court agrees with the government on this issue. Mr. Williams has not exercised any administrative remedies regarding these concerns. As noted by the government, there is no record that he has made any such claim in the Bureau of Prisons administrative remedies file. Dkt. 933, at 2. The Court will not repeat the government's arguments, but the Court confirms that if inadequate medical care is an issue, Mr. Williams can pursue available administrative means to address his issues. The record does not support that he has done that, hence his request for relief is denied. Moreover, as noted above, the medical records available indicate that the Bureau of Prisons has been

responding to his medical complaints as evidenced by the x-rays and volume of treatment provided to him.

### D. Safety of Others

The Court next turns to whether Mr. Williams presents a danger to the safety of any other person or to the community. As noted above, while not bound by U.S.S.G. §1B1.13, this Court exercises its discretion and will consider the 18 U.S.C. § 3553(a) factors in assessing whether a reduction in sentence is appropriate.

In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).  The Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Mr. Williams argues that with supervision and support he would not pose a danger to the community, citing his engagement in treatment despite receiving no sentencing credit, his strong support network available to assist him upon his release, his likelihood of securing employment, his pretrial performance while on bond, and his excellent disciplinary record while incarcerated.  Dkt. 896.

The government counters that Mr. Williams remains a danger to the community in that he was involved in a significant amount of drug trafficking activity as a mid-level member of the conspiracy while possessing firearms.  The government further cites Mr. Williams's lengthy criminal history, though concedes that the criminal history is dated. Dkt. 914.

Mr. Williams's involvement in this case included his dealing in kilogram quantities of a dangerous drug, cocaine.  His drug dealing activities revealed that in his home he possessed four semi-automatic 9mm firearms in various locations of his home, including on the top of his refrigerator, his closet and master bedroom.  All these

weapons were loaded, and some included extended high-capacity magazines. The government pointed out that Mr. Williams, a convicted felon, had his right to possess a firearm restored just a year before he was intercepted dealing drugs with the lead defendant of the drug conspiracy. The record indicates the weapons and evidence of drug dealing were in Mr. Williams's home where he resided with his wife and four children. When given the opportunity to legally possess firearms after a felony conviction, it was merely a matter of months before he once again engaged in illegal activity with drugs and firearms. These circumstances serve as the basis why this Court continues to have significant concern for the safety of others if he were to be released, and finds that his request for release must be denied.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Williams's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considers the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner. 18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

While conceding the instant offense was serious, and involved large quantities of narcotics and the possession of firearms, Mr. Williams argues that the mitigating factors that the Court considered at the time of sentencing, combined with the time he has already served and his request for extended home confinement or supervised release would satisfy the § 3553(a) factors set forth above. Dkt. 896.

The government cites to the Court's rulings denying motions for compassionate release brought by other members of the conspiracy, some of whom had similar medical issues, but were not yet vaccinated, and posits that granting Mr. Williams's motion would result in unwarranted sentencing disparities. Dkt. 914. The Court agrees. The completed

vaccination of Mr. Williams significantly reduced his basis for relief. Granting relief to Mr. Williams with his vaccination record, while denying relief to other defendants who were not vaccinated, would clearly create sentencing disparity.

### III.  CONCLUSION

For the foregoing reasons, Defendant Patrick Dyon Williams's motion for compassionate release is **DENIED**.

DATED this 11th day of June, 2021.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge